**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PATRICIA A. STEWART,

                                    Debtor-Appellant,                1:24-cv-00730 (BKS)

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

                                    Appellee.

---

**Appearances:**

*For Debtor-Appellant:*
Matthew J. Mann
Mann Law Firm, P.C.
426 Troy Schenectady Road
Latham, NY 12110

*For Appellee:*
Robert W. Griswold
LOGS Legal Group LLP
175 Mile Crossing Boulevard
Rochester, NY 14624

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Debtor-Appellant Patricia A. Stewart brings the above-captioned appeal from an order of

the United States Bankruptcy Court for the Northern District of New York granting Appellee

Federal National Mortgage Association relief from an automatic stay pursuant to 11 U.S.C. §

362(a) in Chapter 13 Bankruptcy Case No. 23-10200. Presently before the Court is Appellant's

motion for a stay or injunction pending appeal pursuant to Federal Rule of Bankruptcy Procedure

8007: (a) enjoining any person from removing Debtor and her husband from their home; (b)

staying any proceeding for the removal; and (c) prohibiting Appellee from transferring title to

her home "without an affirmative order of this Court permitting such transfer." (Dkt. No. 12, ¶

1). Appellee Federal National Mortgage Association ("FNMA" or "Fannie Mae") opposes

Appellant's motion. (Dkt. No. 16). The motion is fully briefed. (Dkt. Nos. 12, 16–17). For the

reasons below, Appellant's motion is denied.

## II.    Background[1]

Patricia and Ronald Stewart mortgaged real property located at 516 Vernal Butler Road,

Cairo, New York ("Property"), (Bankr. Case Dkt. No. 47-1, at 7),[2] which was subsequently sold

on January 31, 2023 pursuant to a Judgment of Foreclosure and Sale. (Bankr. Case Dkt. No. 77,

at 11, 16).[3] A memorandum of sale signed by the referee states that Flagstar Bank, FSB

("Flagstar") purchased the Property for $191,600. (*Id.* at 16). According to an unsigned and

undated referee's report of sale, Flagstar assigned the bid to Appellee Federal National Mortgage

Association for the sum of $191,600. (*Id.* at 17–18). On March 1, 2023, Appellant filed a

voluntary petition for relief under Chapter 13 of the U.S. Bankruptcy Code. (Bankr. Case Dkt.

No. 1). The petition operated as an automatic stay of any act by Appellee to "obtain possession

of property of the estate" or to "exercise control over property of the estate." 11 U.S.C. § 362.

On August 1, 2023, Roundpoint Mortgage Servicing Corporation ("Roundpoint"), as

servicer, filed a motion with the Bankruptcy Court for relief from the stay. (Bankr. Case Dkt. No.

73). On August 22, 2023, FNMA/Fannie Mae filed an amended motion for relief from the stay.

(Bankr. Case Dkt. No. 77). The next day, counsel for FNMA/Fannie Mae submitted a letter

---

[1] The facts are taken from the documents filed in the Bankruptcy case and in this case.

[2] The Court has cited to entries in the docket in *In re Patricia A. Stewart*, No. 23-10200-1-rel (Bankr. N.D.N.Y.) as "Bankr. Case Dkt."

[3] Appellant sought a stay from the state court two days prior to the foreclosure sale, which the state court denied. *Flagstar Bank FSB v. Stewart*, No. 535862 (3d Dep't Jan. 30, 2023), ECF No. 12.

explaining that the amended motion was to correct the movant's name from Roundpoint to

Fannie Mae, because "Fannie Mae is the purchaser of the Property by assignment of the bid of

the plaintiff in the foreclosure auction, represented by RoundPoint." (Bankr. Case Dkt. No. 79).

The Bankruptcy Court held a hearing on the motion for relief from stay on December 13,

2023. (Bankr. Case Dkt. No. 94). In response to questions raised in the hearing, the parties

submitted supplemental briefing, (Bankr. Case Dkt. Nos. 95–96), and the Bankruptcy Court held

a second hearing on February 8, 2024. (Bankr. Case Dkt. No. 105). On February 20, 2024,

United States Bankruptcy Judge Robert E. Littlefield, Jr. issued an order granting relief from the

automatic stay. (Bankr. Case Dkt. No. 108). Judge Littlefield ordered that:

> [T]he automatic stay, if any pursuant to 11 U.S.C. Section 362(a) is
> hereby terminated for cause as to [Appellee] . . . so that [Appellee]
> . . . may take any and all actions pursuant to the Note and Mortgage
> including but not limited to actions against the Debtor's possessory
> interest in the Property[.]

(*Id.* at 2). Appellant filed a motion for reconsideration, (Bankr. Case Dkt. No. 111), and Appellee

objected, (Bankr. Case Dkt. No. 121). After a hearing on April 11, 2024, (Bankr. Case Dkt. No.

123), Judge Littlefield denied the motion for reconsideration on May 16, 2024. (Bankr. Case

Dkt. No. 128). Upon the stay being lifted, the Referee's Deed was executed into Federal National

Mortgage Association's name on May 16, 2024. (Bankr. Case Dkt. No. 168-2).[4]

On May 31, 2024, Appellant appealed the February 20 order granting relief from the

automatic stay to this Court. (Dkt. No. 1). While the appeal was pending, on or about September

20, 2024, FNMA served a 10 Day Notice to Quit on Appellant. (Dkt. No. 12-2, ¶ 9; Dkt. No. 12-

---

[4] In the Bankruptcy Court, Roundpoint cited to *Rodgers v. Moore*, 333 F.3d 64, 68–69 (2d Cir. 2003) for the
proposition that delivery of the deed would "not violate the automatic stay because it is considered a ministerial act,"
but explained that the Referee would not do so without a court order. (Bankr. Case Dkt. No. 47, ¶ 7). Here, the Referee
did not deliver the deed until the stay was lifted and the motion for reconsideration was denied, accounting for the
delay between the foreclosure sale and the execution of the deed.

7, at 1–2). Appellant asserts that the next step after such a notice is "the service of a petition for removal and potentially removal of Debtor and her husband from the home." (Dkt. No. 12-2, ¶ 10). In response to the ten-day notice, Appellant filed a motion with the Bankruptcy Court on September 25, 2024 for a stay or injunction pending appeal. (Dkt. No. 12-2). On September 26, Judge Littlefield declined to issue a stay pending appeal. (Dkt. No. 12-4). That same day, Appellant filed the instant motion with this Court for a stay pending appeal. (Dkt. No. 12). For the reasons discussed herein, the Court denies the motion.

## III.    Legal Standard

Federal Rule of Bankruptcy Procedure 8007 governs motions to stay pending appeal of bankruptcy court orders. *See* Fed. R. Bankr. P. 8007. Generally, a Rule 8007 motion must first be made in the bankruptcy court. *See id.* A motion for such relief may subsequently be made in the district court so long as it states "whether the court has ruled on it, and if so, . . . any reasons given for the ruling." *Id.* at 8007(b)(2)(B). "A bankruptcy judge's legal conclusions are reviewed de novo. Matters of discretion are reviewed for 'abuse of discretion.'" *In re Singer Co. N.V.*, No. M-47, 2000 WL 257138, at *5, 2000 U.S. Dist. LEXIS 2565, at *13–14 (S.D.N.Y. Mar. 7, 2000) (citations omitted). "[T]he decision to grant or deny a stay pending appeal is within the discretion of the bankruptcy court." *State Emps. Fed. Credit Union v. S.G.F. Props., LLC,* No. 15-cv-418, 2015 WL 7573220, at *2, 2015 U.S. Dist. LEXIS 158991, at *5 (N.D.N.Y. Nov. 25, 2015) (quoting *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y. 1995)). "Thus, the district court 'review[s] the bankruptcy court's decision [to deny a stay pending appeal] only for abuse of discretion.'" *Id.* (alterations in original). A ruling is an abuse of discretion "only if the bankruptcy court 'bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.'" *In re Sterling*, 565 B.R. 258, 273 (S.D.N.Y. 2017).

## IV.    Discussion

The Second Circuit has established a four-pronged test for determining whether to grant a

motion for a stay pending appeal:

> (1) [W]hether the movant will suffer irreparable injury absent a stay,
> (2) whether a party will suffer substantial injury if a stay is issued,
> (3) whether the movant has demonstrated a substantial possibility,
> although less than a likelihood, of success on appeal, and (4) the
> public interests that may be affected.

*Hirschfeld v. Bd. of Elections of New York*, 984 F.2d 35, 39 (2d Cir. 1993) (internal quotation

marks omitted); *accord In re Turner*, 207 B.R. 373, 375 (2d Cir. B.A.P. 1997); *In re Country

Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. B.A.P. 1996). This standard has

been routinely applied to a motion for a stay of an order of a bankruptcy court, pending an appeal

to the district court. *See, e.g.*, *State Emps. Fed. Credit Union*, 2015 WL 7573220, at *2, 2015

U.S. Dist. LEXIS 158991, at *5–6; *In re Rossi*, No. 08-mc-81, 2008 WL 4519008, at *1, 2008

U.S. Dist. LEXIS 75050, at *3 (N.D.N.Y. Sept. 26, 2008).[5] "A party seeking a stay of a lower

court's order bears a difficult burden." *United States v. Private Sanitation Indus. Ass'n of

Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995).

Here, in evaluating the *Hirschfeld* factors, the Bankruptcy Court concluded that "the

second, third and fourth factors weigh against granting a stay." (Dkt. No. 12-4, at 2). The Court

---

[5] There is some ambiguity in this Circuit as to whether the *Hirschfeld* factors must *all* be satisfied for a stay pending appeal to be granted. *Compare, e.g.*, *State Emps. Fed. Credit Union,* 2015 WL 7573220, at *3 & n.1, 2015 U.S. Dist. LEXIS 158991, at *6 & n.1 ("While several lower courts have addressed the four factors as a balancing test, the Second Circuit has not departed from the rigid approach applied in *In re Turner*," which stated that "[f]ailure to satisfy one prong of this standard for granting a stay will doom the motion." (quoting *In re Turner*, 207 B.R. at 375)), *with, e.g.*, *In re Rossi*, 2008 WL 4519008, *1 n.1, 2008 U.S. Dist. LEXIS 75050, at *3–4 n.1 ("A number of district and bankruptcy courts within this circuit have classified the stay pending appeal standard as involving elements, all of which must be demonstrated by the movant in order to obtain relief . . . However, the Second Circuit has treated the general inquiry for granting a stay pending appeal as involving factors, rather than elements, which are to be weighed in considering whether or not to grant relief." (citations omitted)). The Court need not decide the issue, because here, the Court would not grant a stay under either standard.

presumes that the Bankruptcy Court therefore found that the first factor weighed in favor of granting a stay,[6] and only addresses the challenged factors.

A.    **Substantial Injury to a Party**

With respect to the second factor, the Bankruptcy Court concluded that it "would be further frustrating Federal National Mortgage Associations [sic] rights by granting a stay, therefore causing it substantial injury." (Dkt. No. 12-4, at 2).

Appellant's motion for stay pending appeal before the Bankruptcy Court argued that "there would be no harm" to other parties, because "[u]rgency and deadlines were never important to Flagstar as it missed virtually every one set by law or the Courts." (Dkt. No. 12-2, ¶ 94). Flagstar, however, is not the Appellee. In the instant motion, Appellant argues that "[t]he house at issue is 0.000386% of FNMA's net worth" so it cannot be "substantial by any stretch of the imagination" and delay of the sale "cannot possibly constitute 'significant harm'" to a company with a net worth of $77.7 billion. (Dkt. No. 12, ¶ 31). Appellee responds that (1) the argument is unsupported by authority or case law; (2) under this standard, a large business would never be harmed and it is unclear what portion of a company's net worth would be required for the loss to constitute significant harm; and (3) its interests are harmed by the ongoing litigation resulting from Appellant's default over thirteen years ago. (Dkt. No. 16, ¶¶ 47–54).

Courts have found that "further delay" to a "foreclosure action which [another party] seeks to pursue" can constitute substantial harm. *See, e.g.*, *In re Jones*, 2023 WL 3856333, at *3, 2023 Bankr. LEXIS 1481, at *6 (Bankr. S.D.N.Y. June 6, 2023); *G.L.A.D. Enter., LLC v. Deutsche Bank Nat'l Trust Co.*, 2023 WL 5127835, at *2, 2023 U.S. Dist. LEXIS 139336, at *6

---

[6] Appellant argues that without a stay, she will be homeless. (Dkt. No. 12-1). Appellant does not, however, cite to any cases where a bankruptcy court maintained a stay solely on the basis of irreparable harm without other factors also supporting such a decision.

(S.D.N.Y. Aug. 10, 2023) ("Courts in this circuit routinely hold that issuing a stay and delaying a foreclosure may constitute substantial financial harm to creditors." (citing cases)); *In re Melton*, 2011 WL 1600506, at *5, 2011 Bankr. LEXIS 1588, at *17 (Bankr. E.D.N.Y. Apr. 27, 2011) (finding harm to another party where the foreclosure action was commenced years prior, and the debtor's filing was "shortly before significant events affecting the subject [property]"). Requiring the other party to "incur substantial and unnecessary additional expenses in this case and in the foreclosure action, including attorney's fees and publication costs, in order to enforce its lawful contractual rights" constitutes substantial injury. *In re Magnale Farms, LLC*, 2018 WL 1664849, at *5, 2018 Bankr. LEXIS 1040, at *13–14 (Bankr. N.D.N.Y. Apr. 3, 2018). This is especially true here, because Appellee's original motion for relief indicated intent to "proceed with the Eviction as soon as the recorded Referees Deed is received." (Bankr. Case Dkt. No. 77, ¶ 8). Because the Referee's Deed has since been executed, (Dkt. No. 12-6), a stay would be the only thing preventing Appellee from enforcing its lawful rights. Given this case law, the Court finds that the Bankruptcy Court did not abuse its discretion in determining that the second factor weighs against granting a stay because Appellee would face substantial injury.

### B.     Substantial Possibility of Success

As to the third factor, the Bankruptcy Court held that it had "established via multiple hearings and decisions on these issues that there is not a substantial possibility of success for the debtor." (Dkt. No. 12-4, at 2). The Bankruptcy Court considered these issues in three separate hearings. (Bankr. Case Dkt. Nos. 94, 105, 123).

FNMA moved for relief from the automatic stay, (Bankr. Case Dkt. No. 77), pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), which state:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2)  with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A)    the debtor does not have an equity in such property; and
> > >
> > > (B)    such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d). FNMA's motion for relief argued that "the Debtor and Co-Debtor herein hold no interest in the Property, said interest having terminated at the time of sale," and that as such, the automatic stay should be vacated for cause and because Appellant lacked equity in the property. (Bankr. Case Dkt. No. 77, ¶¶ 15–16). The Bankruptcy Court agreed that the stay should be terminated for cause. (Bankr. Case Dkt. No. 108, at 2). The Court considers whether Appellant has a substantial possibility of success on the merits of her appeal of that decision.

In her motion to this Court Appellant did not present any arguments pertaining to her likelihood of success on appeal. (Dkt. No. 12). Appellant did, however, attach as an exhibit the motion for stay/injunction pending appeal that she submitted to the Bankruptcy Court. (Dkt. No. 12-2). In that motion, Appellant primarily argues: (1) Appellee lacked standing to make the motion for relief before the Bankruptcy Court; (2) Appellant retained an interest in the Property, because there is no admissible evidence that a consummated sale occurred, and in either event, she retained a possessory interest; and (3) there are questions of fact precluding a motion for summary relief. (Dkt. No. 12-2). Appellant argues that the "[t]he law as cited within [Dkt. No. 12-2] demonstrate [sic] the substantial possibility of success on the appeal." (Dkt. No. 12-2, ¶ 85). The Court considers each argument in turn.

1.    **Appellee's Standing**

"Generally, to have standing in bankruptcy court, a party must possess: (i) prudential standing; (ii) constitutional standing; and (iii) standing under [the relevant section] of the Bankruptcy Code." *In re SVB Fin. Grp.*, 662 B.R. 53, 62 (Bankr. S.D.N.Y. 2024). The doctrine of prudential standing "bars litigants 'from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves.'" *Id.* (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 643 (2d Cir. 1988)). Constitutional standing requires an injury in fact that is fairly traceable to the defendant's conduct and likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Under 11 U.S.C. § 362(d), "a party in interest" can seek relief from the stay.

Generally, "the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983). The *In re Comcoach Corp.* court held that the bank seeking relief in that case "must be either a creditor or a debtor to invoke the court's jurisdiction." *Id.* However, the Second Circuit subsequently cautioned against such a narrow reading, concluding that such a holding is "divorced from its rightful context[.]" *Bayview Loan Servicing LLC v. Fogarty*, 39 F.4th 62, 79 (2d Cir. 2022). Instead, whether an entity is a party in interest "must be determined on an *ad hoc* basis." *Id.* (quoting *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d Cir. 2011)). Rather, the governing principle to be drawn from *In re Comcoach Corp.* is that, '[t]o the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else.'" *Id.* at 79–80 (quoting *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007).

Here, Appellant argues that "FNMA never, by competent evidence, demonstrated its standing to make the motion for relief." (Dkt. No. 12-2, ¶ 43). Appellant argues that "at the time

of filing of the bankruptcy petition, the sale was mot [sic] yet consummated." (Dkt. No. 12, ¶ 13). A memorandum of sale, however, states that on January 31, 2023, Flagstar purchased the Property for $191,600, and the undated and unsigned referee's report of sale indicates that Flagstar "subsequently assigned the bid to" Appellee. (Bankr. Case Dkt. No. 77, at 16–18). Furthermore, upon the Bankruptcy Court's order granting relief from the stay, the Referee's Deed was executed on May 16, 2024, declaring that Patricia Stewart "does hereby grant and convey unto the party of [Federal National Mortgage Association], its successors and assigns, the premises described[.]" (Dkt. No. 12-6, at 1). In her motion before the Bankruptcy Court to stay pending appeal, Appellant conceded "the issuance of a referees deed granting FNMA title to the Debtors' home[.]" (Dkt. No. 12-2, ¶ 8).

As indicated by these documents, it appears that the property was assigned to FNMA and that it is asserting its own rights in seeking relief from the stay so that it may proceed with the eviction. Under the New York Real Property Actions and Proceedings Law Article 7, N.Y. Real Prop. Acts. Law § 713(5), a special summary proceeding to recover possession of real property may be maintained after a ten-day notice to quit if "the property has been sold in foreclosure and either the deed delivered pursuant to such sale, or a copy of such deed, certified as provided in the civil practice law and rules, has been exhibited to him." On this record, Plaintiff has failed to establish that the Bankruptcy Court abused its discretion in concluding that there is not a substantial possibility of success on appeal on the issue of standing.

### 2.    Interest in the Property

Appellant argues that she retained an interest in the property because title does not transfer until all conditions of the terms of sale are consummated. (Dkt. No. 12-2, ¶¶ 73–74 (citing *Tuthill v. Tracy*, 31 N.Y. 157 (1865)). Appellant argues that under *Tuthill*, "a foreclosure sale has two parts, one being the auction, often colloquially but improperly called the 'sale' and

10

the second being consummation of the sale" and that "title does not transfer until all conditions of the terms of sale are 'consummated[.]'" (*Id.*). Indeed, *Tuthill* involved a foreclosure sale and held that equitable title transfers upon purchase and legal title transfers upon consummation of the sale. 31 N.Y. at 161. As such, even under Appellant's cited case law, she lost equity in the property at the time of the foreclosure sale.

To that end, Appellee argued in its initial briefing seeking relief from the stay that title transferred "the moment the Property was sold at the foreclosure sale, which sale pre-dated the within bankruptcy filing." (Bankr. Case Dkt. No. 77, ¶ 13). In accordance with Appellee's view, New York bankruptcy courts have consistently held that "under New York law a debtor loses all equitable and legal interest in real property validly sold at foreclosure whether or not the deed to that property has been delivered to the purchaser." *In re Ghosh*, 38 B.R. 600, 602 (Bankr. E.D.N.Y. 1984) (citing cases); *see also In re Ellis*, 40 B.R. 760, 763 (Bankr. E.D.N.Y. 1984) ("[T]he mortgagor's equity of redemption is barred by the foreclosure and sale and . . . a deed is not necessary to accomplish that result."). [7] Although *Tuthill* distinguished between equitable and legal interests, *In re Ghosh* explains that a seller in ordinary real estate "continues to hold legal title until the deed is delivered to the buyer at the closing" because the seller "may choose to back out of a contract of sale and suffer the consequence" whereas a mortgagor or debtor in a forced sale has no such option and therefore "has no legal or equitable interest in real property after a foreclosure sale." 38 B.R. at 602–03. Therefore, under New York law, "the debtor's interest in the property is extinguished upon the completion of the foreclosure sale. He has no right to reinstate the mortgage since it no longer can be property of his estate[.]" *Id.* at 603.

---

[7] Appellant argues that the "validity of the judgment of foreclosure is the very issue on appeal in the state court." (Bankr. Case Dkt. No. 85, ¶ 15). Precisely to the point, the validity is being appealed in state court because it is a state court issue, not a bankruptcy court issue.

At least one bankruptcy court has considered the application of these principles to analogous facts. *See In re Cretella*, 42 B.R. 526 (Bankr. E.D.N.Y. 1984). There, the debtor filed his bankruptcy petition "after the foreclosure sale, but before conveyance of the Referee's deed and confirmation of sale[.]" *Id.* at 530. The court held that this "divested the debtor of any interest in the property notwithstanding the fact that the actual deed was neither delivered nor offered to be delivered until after the petition had been filed," and that therefore, without an interest, the property was not part of the estate. *Id.* The court held that "a foreclosure sale effects a consummated sale" without additional requirements. *Id.* at 531. As such, the debtor "ha[d] no right to reinstate the mortgage under a Chapter 13 proceeding . . . [because] the debtor did not move timely to prevent the foreclosure sale, by filing his petition in bankruptcy after it had been conducted." *Id.* at 532. To that end, the automatic stay under Section 362 did not apply. *Id.* at 532–33. Consistent with this case law, here the Bankruptcy Court concluded that "the interest of the Debtor ceased upon the falling of the hammer." (Bankr. Case Dkt. No. 105).

Appellant next argues that even without a legal or equitable interest, she retained a possessory interest. (Dkt. No. 12-2, ¶¶ 33, 37). At the February hearing, the Bankruptcy Court agreed that Appellant retained a possessory interest. (Bankr. Case Dkt. No. 105 ("[T]here was a possessory interest. The stay attaches to that.")). In fact, without a possessory interest, the Bankruptcy Court would not even have had to lift the stay under *In re Cretella*'s holding that Section 362 was inapplicable. 42 B.R. at 532–33. However, "the Bankruptcy Code's automatic stay provisions . . . [apply] even if the debtor holds only a possessory interest in the property." *Fogarty*, 39 F.4th at 71. As such, Appellee properly filed a motion for relief from the stay before proceeding with any eviction. *See id.* at 76 (explaining that if the appellee wanted to proceed and

the debtor retained a possessory interest, the appellee's recourse "was to follow the Bankruptcy

Code's procedures for seeking relief in the bankruptcy court").

Appellant argues that "the automatic stay protects a possessory interest in property."

(Dkt. No. 12-2, ¶ 33). While it is true that possessory interests "trigger the applicability of the

automatic stay in the first instance, they are not determinative of the fundamentally different

question as to whether the stay, once triggered, should be modified or terminated for cause." *In*

*re Dominguez*, 312 B.R. 499, 506 (Bankr. S.D.N.Y. 2004) (emphasis omitted). The Court does

not find any abuse of discretion in the Bankruptcy Court's determination that Appellant failed to

demonstrate a substantial possibility of success on appeal based on an interest retained in the

property.

### 3.    Questions of Fact

Appellant argues that the Bankruptcy Court improperly treated Appellee's motion for

relief as a motion for summary relief, and that this was improper because there were genuine

issues of material fact requiring an evidentiary hearing, including:

> a. [w]hether FNMA has standing to make the motion for relief from
> stay[;] b. [w]hether Flagstar, Roundpoint, FNMA or some other
> entity was the successful bidder at auction[;] c. [w]hether FNMA or
> any predecessor in interest consummated the sale of Debtor's home
> such as by payment[;] d. [w]hether consummation of the sale
> occurred, if it occurred at all, pre petition [and] e. [w]hether a sale
> of Debtor's property occurred at all[.]"

(Dkt. No. 12-2, ¶¶ 6(d), 51, 56).

"A bankruptcy court has the discretion to decide an issue[, including a motion to lift a

stay,] without holding an evidentiary hearing, and a district court can reverse such a decision

only if it amounts to an abuse of discretion." *In re Sterling*, 565 B.R. at 273. However, § 362(d)

does require "a hearing," and § 362(g) sets forth the burdens of proof at such hearing: "(1) the

party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues."

Here, the Bankruptcy Court *did* hold several hearings wherein Appellee argued that Appellant lacked equity in the property. (Bankr. Case Dkt. Nos. 94, 105, 123). At these hearings, Appellant raised these asserted questions of fact, and the Bankruptcy Court concluded that these questions are in the purview of the state court and do not bear on the bankruptcy issue. (*Id.*).[8] The Bankruptcy Court did not abuse its discretion in concluding that there was not a substantial possibility of success on appeal, without holding an evidentiary hearing. *See In re Sterling*, 565 B.R. at 274 (finding no abuse of discretion because appellee provided proof of standing, appellant failed to adequately protect an interest in the property, and remaining factual questions were "irrelevant to the issues before the Bankruptcy Court" and could be argued in other appropriate forums).

### C.    Public Interests

As regarding the fourth factor, the Bankruptcy Court concluded that "[p]ublic interests would also be negatively impacted as granting a stay would further delay the foreclosure system." (Dkt. No. 12-4, at 2). Although Appellant's motion before the Bankruptcy Court did not address the public interest, (*See* Dkt. No. 12-2), in the instant motion, Appellant argues that it "is a ludicrous statement" that "the very limited relief [sought] could somehow disrupt and delay the entire 'foreclosure system.'" (Dkt. No. 12, ¶ 34).

The public interest is not served by granting a stay pending appeal where a dispute "has been litigated in state court through [the bank's] foreclosure action. Public policy favors both

---

[8] Appellant notes that she has, in a state court action which raised numerous issues, appealed only one issue – "whether the sale was properly consummated before the filing of the bankruptcy petition." (Dkt. No. 12-2, ¶ 22).

judicial economy, particularly in bankruptcy proceedings, and finality in litigation, including foreclosure actions." *In re Magnale Farms, LLC*, 2018 WL 1664849, at *7, 2018 Bankr. LEXIS 1040, at *18. "Since the public has a strong interest in the expeditious administration of the bankruptcy proceedings and preventing the abuse of the court system by those who are unable or unwilling to pay their debts in a timely fashion, the public interest factor weighs heavily in favor of denying a stay pending appeal." *In re Jones*, 2023 WL 3856333, at *3, 2023 Bankr. LEXIS 1481, at *7–8 (citing cases). This is especially true where the debtor "has for a number of years . . . employed a scheme intended to frustrate and delay the creditor from exercising its legitimate rights. . . . [W]hen the [Bankruptcy] Code is utilized, as it is by this Debtor, for no legitimate purpose, the effect is to harm others who seek the protections of the Code as it was intended." *In re Melton*, 2011 WL 1600506, at *5, 2011 Bankr. LEXIS 1588, at *17–18. The Bankruptcy Court noted that Appellant's counsel "indicated that if [they] ultimately prevail in the state court and there's no claim, there's nothing to do in the 13 [bankruptcy action]. The 13 would be moot." (Bankr. Case Dkt. No. 105). As such, the Bankruptcy Court concluded that the petition was "all about getting a stay in [Bankruptcy] Court when [Appellant] couldn't get a stay in the state court . . . [because] these are all state court issues." (*Id.*). Therefore, the Court concludes that the Bankruptcy Court did not abuse its discretion with respect to the public interest factor.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Appellant's motion for a stay, (Dkt. No. 12), is **DENIED**.

**IT IS SO ORDERED.**

Dated: <u>December 11, 2024</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

15